Cases on the docket today begin with Case No. 2017-11477, Stile Life Partners Creditors' Trust et al. v. Fred A. Cowley et al. and there are four other related cases that we're hearing today as well and the parties have worked on an agreement for presentation of the argument today and we're going to follow the suggestions of the party, the Council, in how the argument will be presented in all five of these cases simultaneously. So we will begin with Council for Life Partners. May it please the Court, Nolan Knight here on behalf of the Life Partners appellants. Members of the panel, appellants respectfully request that this Court reverse the Rule 12b-6 dismissal by the lower court of appellants' causes of action. The most fundamental reason why reversal is appropriate is because when a plaintiff avers factual content that corresponds with each and every single element of a legal right to relief, then that cause of action is entitled to proceed to the merits and survive Rule 12b-6 challenges. That is no more or less true in a post-Twombly-Igborg era as it was in a pre-Twombly-Igborg era. The District Court seemed to be troubled that the transferor was not identified. It's my understanding that the transferor is the Life Partner Inc. entity, is that correct?  Do we know that by anything other than the proposed fourth amended complaint or do we know that from some other source that's in the record at the time of the third amended complaint? We do know that from the live pleading and in the first case, the Cowan case, I believe it was a third amended pleading. In the other cases, wherever we were in the sequence of the pleading, yes, Your Honor, we do know that the entity who paid the fees and commissions... Can you identify where that is in the third amended complaint, please? Because that appears to be an issue for the District Court of whether the transferor is identified. I know you have a chart that tells the years and the entities who got the transferee and later on you have an amended chart that actually has the specific date, but do you have the transferor identified in the complaint or the documents that were attached to the complaint that have been considered? I do believe that we do, Your Honor, because, for instance, in the first case, the Cowan case, at record site 53-27 to 53-28, paragraph 41, we just described the nature of the investment scheme that the Life Partners entity and the Life Partners Inc. was the only operational entity that they were engaged in. And in that description, for instance, Your Honor, we note that the mechanics of the scheme was for Life Partners Inc. to purchase life insurance policies from the original policyholder, whereby Life Partners Inc. then became the owner of the policy. In exchange for the licensee appellees, who we also have individually identified, going out and soliciting the investors, Life Partners Inc. paid the fees and commissions to the respective licensee appellee. And in addition to those fees and commissions, just by way of example, again using Cowan case as a point of reference, but this method is duplicated in all of the other cases. But in Cowan, at record on appeal site 53-56, paragraph 130 of the live pleading was made to the licensees in the form of fees and commissions. When you say live pleading, because there were amended versions, are you talking about the operative one, the third? That's correct. In Cowan, it was the third. And I'm making reference to the third amended complaint in the record site for that pleading, which was a live pleading before the lower court. You go ahead. No, no, no. I was going to ask, is it your position that regardless of whether 9B applies or whether Rule 8A applies, that you have satisfied the pleading standard? That either way, because you've identified the transfer, you've satisfied. Is that your position? That is our position, that we do not believe that Rule 9 applies. But assuming argument it does, yes, Your Honor, we think that we've provided the level of specificity to clear even that pleading threshold. And just by way of example, if I could elaborate on some ways in which we did. But perhaps I should preface that by articulating, if we are talking about the fraud, then we have to talk about the fraud relative to the persons who actually must have engaged in the fraud. And one of the problems with the lower court's rulings, as well as the arguments that the direction as to who had to engage in the fraudulent conduct. Who do you believe had to engage in the fraudulent conduct? Based upon the language of the statutes, the Texas Business Commerce Code provision that established the actual fraudulent transfer or constructive fraudulent transfer cause of action, it is the detour who is the person who must have engaged in the fraud. Here, the detour are the life partners' entities. The ink that we're talking about and the insiders there, Pardo and Carr and those people who were discussed. Is that right? That's exactly right, Your Honor. And because those are the individuals who must have engaged in the fraud, any question with respect to And there's actually a public policy reason that is embodied and captured in all of the statutory provisions to explain that. Well, I don't think that, maybe I'm wrong, but I don't think the district court held that you had to say what the licensees did wrong. I think the district court had the view that you didn't specifically identify who had life partners or which life partners' entity was involved. Is that not your understanding of what the district court did? If that was the district court's rationale, then I would have to respectfully disagree that there was not sufficient specificity as to the nature of the life partners' entities and their insiders' fraudulent conduct. And I can provide several examples. Please do. For instance, we narrate in our plea, and this can be found using the Cowley case just as a point of reference, but again, the same method is duplicated in all the other cases. We narrate, for instance, at record site 5329, paragraph 50, the following, to provide context for the who, what, when, where, and how as to the life partners' entities' fraud. And I quote, the actual mortality rates continue to show that Dr. Cassidy was terribly wrong. By the end of 2007, only seven out of these 292 policies had matured. As illustrated on Exhibit 1, there should have been more than 150 maturities during this period if Dr. Cassidy had been on target. The reason that language is important for framing the issue of particularity as to the life partners' entities' fraud is because statistically, if only seven out of 292 policies that life partners was predicting would have matured by this time, if only seven had matured, that means 95% of the time, life partners knew that it could not accurately make these life projections. In 2007, yet it continued to market and sell these products to the various investors. And as far as framing the issue, that's important because we are only seeking to recoup fees and commissions paid in 2008, 2009, 2010, 2011, on through 2015. Counsel, let me interrupt you. Now that you've said that, what you are seeking to recoup, which of the claims asserted do you believe do not require any intent, element, or scienter? Of the claims, Count 2 for constructive fraudulent transport does not by statutory edict. The corollary claim under Count 4, which is the federal bankruptcy analog for the state count, which is under Count 2, does not require intent, nor does the negligent misrepresentation, which is an assigned claim for the individual investor's own actionable conduct. But on that score, what is important about even that claim? That's 10, I believe. That's 10, that's correct. Negligent representation does not require a showing of intent, fraudulent intent, on the part of a defendant. The very premise of negligent misrepresentation is that the defendant did not exercise reasonable care. But that still is a Rule 9 standard, isn't it? Would you have to plead the particularities of reliance and what the representation was and the approximate date and time it was made and to whom? If a plaintiff elected to couch the negligent misrepresentation in terms of the defendant's fraud, and I'm not entirely sure why a plaintiff would do that, in my experience, plaintiffs tend to plead fraud and, in the alternative, plead negligent misrepresentation precisely because you may not be able to establish intent on the part of the defendant. But that does not excuse the defendant from being accountable if they fail to exercise reasonable care in passing on fraudulent or inaccurate information. The licensees don't have to have been engaged in fraud for you to succeed on any of your claims? No, Your Honor. They do not. Right? Yeah, okay. They do not. Even if 9b applies instead of 8, there's no fraud required by the licensees. That's correct, Your Honor. Okay. So, I'm a little bit confused because it appears that this case is proceeding on a slightly different track than the one that Judge O'Connor has. Are you in that case, too? Are you familiar with that? I am familiar with it. It is now on appeal. I'm actually counsel of record on the appeal. I was not a trial counsel. Okay, because Judge O'Connor determined that the Jan V standard that we've used in Tufta cases, that they've used extensively in the Northern District in Tufta, applied and found it was a Ponzi-like scheme, even if it's not a Ponzi scheme, but that it was particular enough and that it was really Rule 8, but that it was satisfactory for Tufta. And then Judge McBride found that you needed a 9 standard and that we're not going to say it was a Ponzi-like. Is that right? That's correct. Okay. So, they disagree, but it's the same people, I mean, groups of people in the same case. Is that wrong? No, that's correct, Your Honor. And we candidly think that that's significant for a reason a little bit independent of the 12B6 analysis. We emphasize that point relevant to the Rule 15 analysis if we have to get there. And we're hopeful that the court agrees with us that considering that the standard is, you look at the legal elements and then you only cross-reference to see the factual content is in the complaint, that we don't get to the point where we have to invoke the Rule 15 concept. But if we do, Your Honor, we think it's significant that in the context of the extremely liberal standard for Rule 15 amendment, that we not look at this case as if it was existing in a vacuum. This is not an incident where a recalcitrant or an indifferent or a sloppy plaintiff did not show sufficient caution with respect to his obligation to articulate claims. Why didn't you or whoever the correct lawyer is, why didn't that lawyer do the Fourth Amendment complaint work at the time of the Third Amendment right? Because once it became apparent that there could be a snag here, why didn't the Fourth Amendment complaint get filed? I mean, why didn't at the time, because you had the information. Well, I think your reference to what happened before Judge O'Connor is critical to give context to that. We used the exact same pleading methodology in the claims that were proceeding before Judge O'Connor. And those claims, members of the panel, have proceeded to a jury verdict finding that the life partner's entities, Mr. Pardo in particular, engaged in fraud. That is what was informing our frame of reference. And that's what I meant by it's not fair to analyze our conduct in this case in a vacuum. We didn't just have an abstract sense that our methodology was sufficient. We had a very particularized, concrete indication from a judge within the same district that the pleading methodology was sufficient. If we had had a contrary outcome before O'Connor, we obviously would have prophylactically modified our pleading approach in all of the cases. Why didn't you race out as soon as the bankruptcy judge said you could amend before you got to the district court in this case? Why didn't you? Because the bankruptcy judge did let you amend. And there was nothing that you couldn't have done it right then even while it was going to be taken up by the other side if the bankruptcy judge had given you leave. Am I wrong on the record on that? The bankruptcy court in his report and recommendation to Judge McBride, the district court, he indicated in that context that we should be allowed leave. Right, you should be allowed to leave. So you could just ask him, we want to go ahead and amend. Thank you for pointing this out. But since you have the data, you absolutely have the data for the Fourth Amendment complaint. If I'm understanding the question correctly, Your Honor, you're saying that when the bankruptcy court judge made the report and recommendation And said, oh, I think this is weak here, yeah. Our perception was that the orderly course, because the entire report and recommendation That is the ordinary course that you wait. But you had a chance to fix something that could be wrong. You had the moment where you were still under the jurisdiction of the bankruptcy court. Even at that day when it was already requested and appeared to be granted. Even that day during the bankruptcy proceeding, you could have done it. And that's gone back that night. It's hindsight now. So let's proceed with any other arguments that you have. Your Honor, I just want to make sure that I'm clear on the context. The bankruptcy court did not communicate to us when we made the oral request, which we contend is consistent with Thompson v. Chevron. He did not communicate to us at the hearing that he was inclined to and certainly not that he was going to grant leave. He didn't address it at all. But the question is why did you not then file a motion for leave to amend knowing that at that point It's not a question of what the bankruptcy court said or didn't say at that point. You're aware at that point that there are some perceived deficiencies in the pleading. And you also have in your possession the facts to plead. It would seem that the thing to do at that moment would be to file a written motion for leave to amend. And file the curative amended complaint. I guess that was what I was wondering. I don't know if it's the exact same thing that Judge Elrod is asking about. But the question is why would you not have pursued that at that very moment so as to remove this as an issue? I think that's a fair point, Your Honor. But I have to, again, reemphasize this is not just a linear dynamic. We were not operating in a vacuum. This pleading methodology that was being challenged, that we thought adequately for some of the reasons that I've worked through thus far, articulated factual content that corresponded with the elements, in the context of the fact that that approach had been effective in different contexts, and we didn't even have the feedback from the bankruptcy court saying, yes, I agree with the appellees that there are these deficiencies. You didn't know yet that the court was going to rule that they were actual deficiencies. That's exactly right, Your Honor. But just the chance that they might and you could clean them up might have been, but that would have been maybe the more prudent cause of approach. It perhaps would have been, Your Honor, but that does not equate to the limited exceptions, respectfully, for disallowing the Rule 15 amendment. It's not the kind of delay. I agree. So you're saying that we shouldn't hold that against, that you didn't rush out and do it that day, doesn't mean you shouldn't be allowed to do it now. I should hope not, Your Honor, and frankly, in the Cowley case, it would be the Fourth Amendment pleading if we're allowed to amend. That document, and we still think that the Third Amendment is adequate for reasons that I've worked through again. The Fourth Amendment complaint is a 3,000-page submission. That's what it took to align with this kind of criticisms and demands that the lower court suggested there were with the Third Amendment. Well, let's talk about the Third and Claim 8, for instance, equitable subordination. Is there a reason why, as I understand it, there are three types of inequitable conduct, any one of which could be alleged, but it doesn't look as though you've pled which, if any, of those three types of inequitable conduct would apply. Again, Claim 8, this would be in the third, the pleading that is operative in this case. Am I misreading that? Is there an example of inequitable conduct that is pled under the statutory authority? Your Honor, all of, in fact, count to your question, but I think Count 6, 8, and 9 are all remedial provisions for the liability counts. Two of those counts, almost one in particular, obviously avoidance, and no uncertain term says if you establish a liability under Section 544.11 USC, you, in essence, have this right to remedy. One does it in a more oblique way, and the equitable subordination, I think, is probably the most abstract, but our philosophical approach in articulating that remedy was, in essence, that by providing the level of detail, whether measured by Rule 8 or whether measured by Rule 9 to establish the liability, that was the requisite factual adherence to warrant a prospective recovery under equitable subordination. And I think I'm right at this, but it might take me a little bit of time to put my hand on it and my notes. I think equitable subordination, in particular, as one of the three criteria to be entitled to it, may be conditioned upon breach of a fiduciary duty. So that's another example of the tie-in type of component. But do you say that there's a fiduciary duty and who has it and how it was breached? We do of your factual content that is consistent with the standard. What factual content? That some particular person had a fiduciary duty and that they did not live up to it by a particular action? Yes, Your Honor, we do. We do because, and we're relying upon a case of the Western District of Texas principally for the notion that when a person transitions from just selling a security interest to actually counseling and advising, acting in the capacity as a broker, for instance, that that transitions the person into the realm of being a fiduciary. And we allege, in fact, let me give you the case ideally. I'm having some trouble putting my hands on it. I'll make sure to make note of that reply. But we allege that these individuals were counseling the respective investors on the purchase of these security interests. And so that's the factual content. It may be true, but under Tuamlin-Iqbal, I actually think that the directive is to not plead labels and conclusions, but to instead plead the content. We plead the content that aligns with what we believe to be the legal elements to establish a fiduciary relationship. And despite that content, the court, as opposed to objectively acknowledging the content, in essence, engaged in with Tuamlin-Iqbal, tell us that a court respectfully is not supposed to do. Make value judgments. Make qualitative or subjective assessments. Handicap the probability as to whether or not evidence may or not be forthcoming at an appropriate procedural stage. Counselor Gynes, shifting to what I think of as the second issue. So the Tuamlin-Iqbal and the heightened particularity, both sides of the brief, that it's complex given the number of claims here. But just on your argument there was an abuse of discretion not to grant leave to amend, I have two questions. One is you're relying heavily on the oral request of the bankruptcy judge. That was in June, correct? That's correct, Your Honor. Looking at the record, it struck me that when you responded to the report and recommendation, you embraced the bankruptcy judge's statement that you should have been given leave to amend. But in your brief, you aren't embracing that as a request to amend. And I was surprised why not. I want to make sure I'm clear. It is our position that that oral statement at the June meeting. I understand that. Yes. Well, okay, if I don't mind, just sub-questions then. What's your best authority that that oral statement did suffice? Do you have any case law? I think Thomas B. Chevron would say that you do not need a formal motion. Okay. So I understand that portion. But why isn't your stronger argument, and maybe you've waived it or maybe there's a flaw in my thinking, why isn't your stronger argument that you made an explicit written request to amend, and therefore the district judge was wrong factually when you responded to the report and recommendation and said, yes, we want what the bankruptcy court suggested? I think that's an excellent point, Your Honor. But you didn't argue it. Our framework was because the oral request provided the context for everything else that happened beyond there. Okay. And given that this court's authority is so clear, and unlike some of the appellees who seem to strongly imply that unless you follow on an oral request with a written request, the oral request is not effective. Well, the implications of that would almost be that in this circuit we're doing away with oral motion practice. And I would assume that we're not ready to progress to the point where we would cut off an advocate's ability. I understand the June argument, and I know your time's running out, so I just wanted to ask the other question. And this is fairly basic. But if we're just looking at the whole picture of the district court's discretion with a very liberal standard, are you saying that the district judge abused its discretion because it was wrong legally in terms of seeing futility here? Or are you saying the district court abused its discretion because it was wrong factually, because, in fact, you did seek leave to amend? I think it's candid a little bit of both. And I would say if it was futility, I'd be in the de novo standard, which may be preferable, whereas we're in abusive discretion the other. But to be candid with the court, because this is the way that the lower court framed it. He both made reference to what he seemed to be implying was unacceptable delay. And then he went on to separately suggest that he did not think that the proposed amended pleadings cured the deficiencies. So in fairness, that's probably both the futility issue as well as the delay issue. And how determinative, because our case law seems to go all over the place on this, how determinative is it that a party point to prejudice from granting it or not? Do you understand the question? I do understand it. One of the exceptions to the liberality of the Rule 15 Amendment is if a party, the opposite party, will be subject to, quote, unquote, undue prejudice. So I think that it is important. And what's been their best argument that they would be prejudiced by allowing the Fourth Amendment? Your Honor, I will be curious to hear in their response argument what that is, because I have not heard an argument as to why they would be prejudiced, other than the fact that defendants generally do not like to be sued. But that is not an articulation of undue prejudice, particularly when you factor in that although temporally it may seem as if this case is fairly protracted, the vast majority of the downtime, if you will, in this case, owes to the fact that the bankruptcy court judge stayed the adversary proceeding and that stay was in effect from June 16, 2016 to February 2017. No one in the context of that stay, none of the licensee appellees, objected to the effect that that had on the timeline or the sequencing of this matter. In fact, none of them in their response briefing even account for the effect that the stay had. So yes, it's been longer than would be desirable, but that's not a factor that can be attributed to the life partner's appellants. It's a factor that all of us have had to contend with. And so if you look at the actual litigation time, what you see is actually several examples of us proactively, the appellants proactively in response to a motion to dismiss saying, you know what, let's not take this for granted. Let's be proactive, to Judge Alrod's point, and let's just amend this thing to moot the Rule 12B6 challenges. Counsel, can you please elaborate on how you've met the pleading standard for negligent misrepresentation? Is there any explanation of what the misrepresentations were by the licensees and how they failed to act with due diligence and how anybody justifiably relied on their offering materials? Where is that? I understand the whole theory of the case is that they shouldn't have been giving these big commissions to the licensees because there wasn't a basis to pay them out, and they knew that for three years was the data. But what actual misrepresentations are the licensees making that are told about in the complaint? Again, using Cali as our point of reference, and we see this pattern duplicated in all the other cities, there are several examples on record site 5336 and 5337 where we talk about the offering materials. The offering materials were created by the life partners entities and contained the fraudulent representations with respect to life expectancy. The point that I was visiting upon earlier in my presentation with respect to negligent misrepresentation is that to be actionable against the respective licensee of Cali, they need only have passed on what is now indisputably fraudulent information in the offering materials to the respective individual investors. And the record site that this is made reference to provides, I think, 20 separate examples of the substantive content of the offering materials. But is there something where how any investor justifiably relied on the materials? The interrelation with the fact that these individuals were not just passively selling these securities. It is our veerment, which is entitled to this amount. You may answer the question. Our veerment are that because of the nature and the close relationship between the individual investors and the respective licensee of Cali, that that is one of the reasons as to why the respective investors reasonably relied. All other issues are fact issues that should not be resolved in 206 context. Thank you, Counsel. You saved time for rebuttal. I guess we'll hear from Mr. Brandon next. Thank you, Your Honors. If it pleases the Court, Counsel, I am Tom Brandon, speaking on behalf of I guess all of the licensees, over 753 of them in all five cases. I only represent maybe half that many. But we have split our time. I would like to first address some of the questions that you asked about the parallel case, the Part O case. They've been invoking that as though the pleading in that case is sufficient for the pleading in this case. In that case, they were suing Part O, Payden, insiders of cars, and some entities with respect to the fraud that they committed. They were the insiders, and they actually have account for fraud, and they were found guilty of fraud in the jury verdict. But aren't there some of the entities that are – I agree that the main people are in the case, but I also thought there were some peripheral entities in that case as well. There were, but they were all owned by Part O. None of them are here. And so all of these defendants are licensees. Your Honor, what I think the plaintiff has done is plant this as a Ponzi scheme. They initially called it a Ponzi scheme, then they changed it to a Ponzi-like scheme, and now they're trying to apply this on a policy basis to these licensees. Why isn't this a Ponzi scheme? Why isn't this, like Judge O'Connor said, a Ponzi-like scheme even if it's not a Ponzi scheme? There was money being paid out that was from the investors to the licensees when everyone knew that the basis upon which the investors were investing didn't hold water. Because there was – I mean, isn't that the pleading? That's the pleading in the Part O case, but that's not what really happened. What happened, as stated in the complaint, is that the licensees went out and sold fractional interest in life settlements. That was actual money paid to life partners, not the licensees. An actual policy was purchased by the licensees, and so with regard to that – Well, those people got paid. The people with AIDS or the older people, they all got their money because they got the policy, but we're not dealing with that. We're dealing with the investors. Right. The investors holding a policy to be paid by Hartford or whoever. When the insured life person dies, they get paid. The question of whether they paid too much is really the issue in the case, not whether it was an illusory thing. It was not the first set of investors paying off the second set of investors and that there was no product. This is not a Ponzi scheme. In fact – So every set of investors gets made whole? I didn't say – no, they don't get made whole. That's why Italy went into bankruptcy. Yes, exactly. But the fact is, though, they did buy a product. They may only get a portion of their investment back, maybe 80%, 70%. A lot of it depends on how long the person lives, how much premium is paid. It could be that they bought the policy and the next month there was maturity and they got paid and had a rate of return of 50% or 60%. Well, we have a lot of experience with these Tufta cases, and this is similar to that. Okay. So maybe move on to something else. With regard to that, Your Honor, you were asking about the allegations of fraud or claims of fraud against the licensees. And under Tufta, that is a point. Why even bring it up? If they received a check and that check was a fraudulent transfer from the entity-like partners, then that's the basis of the claim, not what actions they took unless it relates to the creditor's claims in 10, 11, and 12. Can I just interrupt for a roadmap question? Because with multiple attorneys arguing, are you going to present different portions? Just so I know, or should I ask you questions? Yes, you are. I'm seeing that. Can you just tell me who's going to argue what? Quickly, I'm going to try to go over as much of the pleadings as I can. You're focusing on the heightened pleading issue. You're not focusing on the re-pleading issue. That's correct.  That will be done by – well, I will talk about the re-pleading. I'm sorry, Rule 9. Mr. Perry will be talking basically about the insolvency issue and other matters. Mr. Stromberg will be talking about the standard of review, abuse of discretion. Okay. And Ms. Lawson will be talking about alternative means for affirming as opposed to just on the grounds of the district court. Perfect. Thank you. But thank you for that question. Counsel, would you agree that some of these claims are, in fact, Rule 8 pleading standard? I mean, I know it seems like we've spent a lot of time arguing between the 9B or 8A standard, but some of these claims would seem to be clearly subject to a late pleading standard. Correct. Specifically, I would ask you about the Section 547 claim, which is Count 5, and the Section 550 claim, which is Count 6. Those, in my mind, are somewhat connected as voidable transfer type claims. Correct. You're arguing that it would be futile to plead a transfer of money in exchange for whatever the product or promise was, and it was within a certain amount of time in connection with the bankruptcy, and that it had a given result on the debtor? It seems like those would be easier to plead, though, wouldn't they? Yes, they would be, with regard to those that you mentioned. With regard to those that have sort of a grave amount of fraud, Counts 1 and 3. Right. Well, I'm putting those aside. Right. But the others, correct, easier pleading standard under Rule 8A. 9B, then, would apply, we believe, to Counts 1, 3. But you argue that even 5 and 6 have not met the Rule 8 standard. Correct. Correct. In 5, we don't know who received what, when, and what time it was, and we didn't know what entity paid it out, because there were three different entities. So we don't know with regard to that concern. But we do know it now. Pardon me? We know it now. We know it's available, and you agree that the Fourth Amendment correctly tells what you need. I believe it tells that it was life partners that paid it out, yes. Yes. Do you believe that your opposing counsel says that you can tell that life partners was the one paying it out by reading the text of the complaint in the previous, in the Third Amendment? Correct. Correct. So why can't you read the text in the Third Amendment and tell it was life partners? By reading the text and putting it with the chart, you know that it's life partners. Now we can. There were three different entities. We weren't sure. But life partners was the only one that was alleged to have been paying out these commissions. It was not clear in the Cali case. In Fourth Amendment, I believe it's more clear. Of course, that's not before the court. Well, the issue of utility is the issue of whether it's futile to amend. Right. Right. Even though burdensome and dealing with all those licensees, they had the burden to come forward with that information. Count Six, I believe, as he said, is sort of remedial. I disagree with his issue on equitable subordination. That's a standalone tort that this court, the Fifth Circuit, has rules on and has a lot of case law with respect to the elements required for that. But with regard to the Pardot, I think there are two things that we can take from the Pardot case and take judicial notice. And they have referenced it, obviously, as parallel proceeding, is that the jury found that life partners did not know, in Question 3, of the fraud until July of 2015. Okay. Is that appropriate? Is that in the brief that we're supposed to take judicial notice of something from what the jury found in another case? That is not. Okay. That's a whole new argument today, isn't it? Yes, ma'am. I think it is. Okay. But with regard to the issue of they answered no to Questions 6 and 7 in the Pardot case, that one had the Ponzi scheme instruction in it. And they found no to that. And we did a brief on that. We're just dealing with whether something was pleaded in this case, right? Right. And how did the judge deal with the pleading standard in the related case, just so that we can know how the cases are being treated and what? So we're only dealing with the pleading standards. Okay. All right. Thank you, Your Honor. With regard to the issue of 9B standard, in the Accelerating Wealth case, they said representations that were passed along, false representations. They said promoting the fraudulent scheme, they were determined to be or claimed to be instrumentalities of the underlying scheme. So, again, I don't know why they're saying they're not suing for fraud when all these fraudulent statements or statements about fraud are before the court. At least 15 times they allege that the licensees unreasonably embraced and passed along false standards, excuse me, false representations. So, Your Honor, we believe that it was correct by the lower court's ruling that 9B applied to the Tufta claims, specifically Counts 1 and 3. Counsel, can you tell me whether or not you agree that Count 11 about Texas Securities Act claims that it would not be futile because the fourth amended complaint tells the license number and the date and all the alleged flaws are in the fourth. So it would not be futile on the Texas Securities Act. I don't believe it would be futile, but I believe that it was dismissed appropriately because of lack of... and they haven't briefed all of the claims and other things that we had mentioned in our brief. But is there something that is missing that shows that it would be futile because it's still not satisfied in the fourth? Well, the fact of standing, whether or not they have a right to sue when they were not the original purchasers of the security. Okay, that would require a motion and legal analysis, not a... I mean, is that before us today? Yes, Your Honor, yes. With regard to the issue of a negligent misrepresentation... I'm sorry, on that point, remind me in Judge McBride's ruling and statements where he said that he was promising futility on a lack of standards. I'm sorry, say that again, sir. How was the futility concerned? Where is it premised on failure of standing? What's the record site for that? One of your colleagues can give it to you. Somebody can back clean up for you on that. Let's keep going. What else did you want to tell us? Negligent misrepresentation, I believe it's not only futile, but 9B requires, again, heightened pleadings. You know, we're dealing with, as I said, over 750 licensees, many of them who are not financial advisors. I know that's not before the court. But if the prejudice that you'd asked about before is there, if they were allowed to replead, then I believe that there would be prejudice to all these people because of their businesses, if they were financial advisors, and even if they weren't, incredible amount of pressure on them, not just financial pressure, but with regard to these claims of fraud, even though it doesn't say fraud, all these claims of fraud and what actions they took and how they respond to that. I'm not trying to be too particular, but when you assert there would be tremendous prejudice, is that based on Judge McBride's finding, or is that your assertion as to sort of common sense? Common sense, I believe that was a question that was posed to Mr. Knight, and so that's why I was following it. Is that in the brief at all? I see amendment would be futile, but I do not see we would be terribly prejudiced by amendment at this point. No, I agree. That was not brief. I was just responding to an earlier question. Okay. So you have not argued prejudice? On that account, no. You have not argued before this court that your clients are prejudiced by allowing amendment? That's correct. The others can speak to that if they did. With regard to the motion formally to amend, I do believe that it was not a good motion, if you read the transcript before Judge Nelms, because it was an advisory opinion, just like the district court said. If you disagree, then we would move to leave to amend. I didn't say we hereby move to amend. What about my question? Is it correct that in their response to the report and recommendation, they did embrace the bankruptcy court's suggestion that leave to amend should be granted? Did they put it in writing to the district court? No, they did not. Not until in three of the cases, the Cali case, American Safety, and 72. They did it after the judgment was entered. But in two, they didn't. We all agree about that. But no, I'm actually asking you to focus on the three where you've just said no, they didn't. Are you very confident that in their response to the bankruptcy judge's report and recommendation, they didn't put it in writing to the district court that they agreed with that? I don't believe that they did. If the record shows that they did, that would be a significant fact. It could be. Okay. Yes, sir. And with regard to the other issues of breach of fiduciary duty, and believe that that claim as well as negligent misrepresentation claim requires the heightened pleading. Negligent misrepresentation requires the misrepresentation of an existing fact. They were talking about future facts, life expectancy, trying to predict when someone would die or not. And so we believe that there is a heightened requirement in that regard as well as the breach of fiduciary duty. Thank you. Thank you very much. We have your argument. Is it Mr. Farrier or Farrier? May I please record? Tom Farrier. I represent Gallagher Financial, and I have the somewhat unique perspective among the appellees' counsel of having one client, and I'd like to bring the benefit of that to the court, because it does allow me to focus on allegations as they specifically apply to one of these defendants, which to some extent can filter out some of the flutter. I do intend to address the insolvency claim, but I also would like to do that. That was not mentioned by Mr. Brannon, and that's why I mention it first, though. Appellants effectively state in the brief, and frankly I agree with them, that this insolvency, at least as to the fraudulent transfer claims, the insolvency claim is a core element that they are pleading. The problem I have with the insolvency claim when you apply a Twombly, Big Ball, and Griggs type analysis, you look at it and you say let's apply experience and common sense and see if the facts as pled infer that. Now, the court correctly noted that in many Ponzi scheme cases, as to fraudulent transfer claims, this court in the past and others have inferred, if you will, no reasonably equivalent value and no benefit. That is, a purchase creates a corresponding liability because it's a Ponzi scheme. It's air. You're not purchasing anything. To me, that is the key difference here between what's being pled. This pleading incorporates a trustee's report. It incorporates lengthy descriptions from the bankruptcy, and on its face it describes an entity that is not selling air. The allegation here is the Life Partners entity is purchasing an insurance policy issued by a third party. Life Partners is not liable on that policy. The allegation is that Life Partners has been selling that policy to two third parties and that what Life Partners is alleged to have done is taken an actuary to use statistical tables that determined these people were going to die sooner than what they say is a correct statistical table. That is, a statistical table says someone has a five-year life expectancy, and they would say, well, no, it should have been seven, eight, whatever, and that's a difference in value. What that is not, though, is not an air purchase. Is it a claim for breaches, potentially fraud, against Life Partners? Yes. But aren't these points of degree? What if Dr. Cassidy was wrong completely? It was a complete sham. So instead of seven out of 220 or whatever the number is, there were none. He had no qualifications. Would it then seem a point? When you keep saying this isn't air, that's the debated point. If Cassidy had no insight, it would be air. Your Honor, the reason I would respectfully disagree with that is that, quite frankly, it's an unfortunate fact. All of us are going to die. There's absolutely no question that's going to occur. These are policies, as the bankruptcy thing shows, on 70- and 80-year-old people. The issue is not whether the policies at some point are going to mature. And further, the issue is not, as they allege, whether or not Life Partners is trying to outsmart insurance companies. An insurance company prices a policy when the person is 20 and starts buying it. These are policies purchased when the person is 70 or 80. That has a very different value on a life insurance policy. And this is, again, all on the face of the pleading in the trustee's report. So I do agree with your point to the extent that it is. Couldn't there be gradations of Cassidy's fraud? But I do think inherently this is not air. And I believe this is an important point for the court to consider when you all go back and consider this case. And here's why. Look, product liability cases where executives are contended to know something and to have a defect in a broad product. Class action cases where X car insurance company is alleged to have overcharged and the executive is known about it across oil and gas cases where royalty overcharges are alleged to have been brought. When we expand the legal inferences that I think the court correctly is applying to Ponzi schemes, I have no issue with that, but when we expand that into fact patterns that are beyond, we get what we have here by the plaintiffs or the appellants, which is attempts to draw inferences as a matter of law on the Tufta claims that are not supported by the fact pattern. And I think that's really, to me, intellectually, what Twombly, Iqbal, and Griggs are trying to say. As you apply human reason, looking at the facts and you see inferences. I understand your point. It's a very intriguing point. Can you tell me which claims you believe your point is relevant to? Count one, two, three, and four. All of the fraudulent transfer claims, Your Honor. Counts two and four, it's directly. It's an element. That's how they get to this legally inferred insolvency. Count one and three require actual intent to defraud, to deceive a creditor. That is to prefer one creditor over another. If you look at the Tufta badges of fraud in the statute, that's where they're all going. Okay. Tell me in the fourth amended complaint, how is that abundantly clear on the face of the fourth amended complaint? Well, I would say they have the fourth amended complaint. Because we have to decide whether it's futile because if they have the fourth amended complaint and it does what it needs to do, then it's not futile. Since I've got three minutes left, this is a great point to just move into the fourth amended. I'm going to skip my part on the third amended, but the third amended is woefully deficient as to my client. But I would like to address this court, that question right there. Okay. Does your client have any specific differences between his clients other than the fact that you have just one? Well, it's a licensee. Okay. It says you just represent one licensee, but it's similarly situated to your co-counsel's client. Now, what's your fourth amended point? What do you want to make of it? Well, when you look at the fourth amended complaint as to my client, here is what you find. You have a complaint that is several thousand pages long that has at one point, my client mentioned, there is an exhibit attached to this exhibit 10 that says, okay, what are the various counts raised against these clients? You turn to my client, and this is very significant as to my client. It's an elderly individual. This is a life-savings dispositive event. I know this court deals with important cases all the time, but I do want to emphasize that point. You turn to exhibit 10, and you see that the fraudulent transfer claims, all of them, are alleged against my client. Well, that's fine. Count 1, 2, 3, and 4. You turn to count 2 through 4 in the body of the pleading, and you see this count is alleged against the people listed on exhibit 1 who received commissions from 2012. That date, yes. So, you turn to the thousand-page exhibit 1. You find my client. There's no commissions within those dates. So, you're not on the hook for that one, then? I don't know. Well, don't you just have to cross-refer? I mean, this is not where we thought we would be with notice pleading, where you have to, and I know we're well beyond notice pleading philosophically, because there was the competing concern that people were bringing people to court willy-nilly, but now we're on the 3,000-page thing that you have to cross-reference. So, can't you just ask them, do you have this claim against us? It looks like you don't, and then you agree, and you're non-suited, or some kind of agreement you sign, so that we don't have to, and since you have one client, it seems like it's easier to do. Yes, Your Honor, and we've asked them repeatedly in motions to dismiss, and we're still listed on Exhibit 10, quite frankly, because it's a related point to your question. On the Third Amendment, the first time I learned, this is after two motions to dismiss, multiple hearings in the bankruptcy court, and appellate briefing, the first time I learned that the negligent misrepresentation claim was not brought against my client, it was specifically referenced in the Third Amendment, was in the reply brief in front of the Fifth Circuit. There's a footnote in there that says, we don't know why Mr. Ferrier is talking about negligent misrepresentation, it's not brought against his client. It's specifically in Judge Nelson's recommendations about my client on that claim. It was argued. That's not reasonable to process, is all I would say. That's not a reasonable standard of 8A. To have to learn in a reply brief whether or not the claims are brought, I'm out of time. Okay. Thank you. We appreciate your argument. Four minutes. Very exciting. Well, you could have had 20 or something. You chose this. I just thought maybe it would be nice for you not to have to. Okay. Use your time. Use your time. My name is Leslie Mosley. I represent 5E at Pelley's in Appeal No. 17-11-488. I am mainly going to address whether the alternative grounds for affirmative relief exist. I know the court is very focused on the pleadings and what the trial court ruled. However, case law is very clear that the court can look at the motions of dismissal themselves and affirm if there are grounds to affirm based on the record. We believe that is the case. I would like to first address Judge Elrod's question regarding the standing. I know you asked Mr. Brandon where in the dismissal was that actual language. I just wanted to clarify for the court, that is not in the dismissal, but it is in the motions to dismiss themselves. You can find that at the appellate record 11-81. So, just so we frame this, these are arguments that Judge McBride didn't rely on, but you raised in your motion to dismiss, that you want us to leapfrog over and decide the case on these issues. And they're not in the brief here either, are they? Yes, Your Honor. We talked specifically as representing five of the defendants. But only for those? I specifically talk about it for mine. However, I incorporate many of the, I'm only in one case, obviously. Right. So, they didn't do that though, right? I'm not sure whether they did it or not. However, I don't think that they had to actually bring forth for the other cases. I do know Mr. Brandon and I did in our cases. But you need to say we can decide this on another reason that we raised below. Correct. Shouldn't you say that? Yes, Your Honor. And you can. And you did. Yes. Go ahead. Then the only thing I'd like to point out, because I think the court is not interested in listening to additional affirmative grounds, would be that my clients are also similarly situated to Mr. Ferrier's client, where they have been, all of the claims have been alleged against them, including these fraudulent transfers. One of my clients doesn't even have any fraudulent transfers in the plating, as far as I can tell. Well, if you're not on the list, then you're out, aren't you? It is impossible to tell. And I would agree with Mr. Ferrier that we have repeatedly asked. We have motions to dismiss. As far as we can tell, we are still included in those claims, regardless of whether the statute of limitations would apply, regardless of whether my clients didn't even receive a transfer. And I think that is the problem, in general, with this mass pleading that has been pled by the appellant, is that we are unable to determine what is really being alleged against us. And I think that's what you've heard over and over from counsel previous to me, is that I know that you have talked about cross-referencing, but even the cross-referencing just doesn't allow us to determine whether my particular clients are included in the certain licensees, which is an undefined term in the pleading. And because it's not, it's impossible for my clients to know what's being alleged against them. We believe that the motion to dismiss was appropriate under 8A, but also that the court can affirm under the affirmative other grounds that were alleged under the motion to dismiss, such as statute of limitations, the standing argument Mr. Brandon discussed earlier, and the privity argument. So 2008 to 2011 are barred by limitations, is that right? That's my understanding, Your Honor. Is that the ones that would be barred? There are two complaints, so one would be to 2013, right? Correct. But there's some that, or do they all go to 2013? Is it 8 to 13, they're all anything south? My argument would be most of them go to 13, Your Honor. Okay. Thank you. Good morning, Your Honors. May it please the court, counsel. My name is Mark Stromberg, and I'm here representing groups of affilees in three cases. The 11-780 case, there are 21 affilees. The advanced solutions or advanced level solutions affilees. In root hospitality solutions, 18-1051, representing 20 affilees. The NWE Corp affilees. And in the accelerating wealth case, 18-10056, the American Money Group affilees. So a total of 62 affilees that have been sued in these cases. I think we should start by talking about the fact that the court's decision here on whether or not to dismiss really boils down to discretionary grounds. And it should be noted, although it wasn't mentioned in any of the argument up to this point, because there was a discussion about the fact that there was an abatement of the case that had been issued sui sponte by Judge Nelms in the bankruptcy court for a period of roughly seven months to allow the plan confirmation process to go forward. The parties agreed on an agreed scheduling deadline. That scheduling deadline was a Rule 16 scheduling deadline, and it had in it a deadline by which the plaintiff was to have amended their pleadings. And that date was March 5, 2017. So that amendment happened in using, as an example, the 72 Vest Level 3 case. That was the first amended petition. I'm sorry, they amended to the second amended petition. So they were already, by this point, by the agreed briefing and pleading deadline, they were on their third complaint. So what happened after that, there was a deadline set for responses by the defendants. The defendants filed 28 that I could count. 26 is referenced in Judge McBride's Memorandum of Opinion and Order. Different motions to dismiss. There were three jointers. This matter went before the bankruptcy court for oral argument on June 12, 2017. At this point, the appellant, then the plaintiff, was defending their pleading. Now the problem here is, and the case law in this circuit is relatively clear, you can make a choice. You can either defend or amend. And that distinction is critically important because if you choose to defend, you do so at your peril. Now, talking about the procedural posture of the case. Do you think that's true even in bankruptcy? Bankruptcy is pretty, a little bit more informal, isn't it, for these types of things in day-to-day work in the bankruptcy court. Everybody's rolling up their sleeves to get things done in bankruptcy court. That is typically true in the case in chief where the matters are core matters. But this case is an adversary proceeding, or five of them, that were by order of the district court on recommendations from the bankruptcy court. The reference was withdrawn. So this is a case where the bankruptcy court was sitting, in effect, to hear matters before the district court. And although the bankruptcy rules still apply to that decision-making process, so do the federal rules of civil procedure. All of the full formalities of the district court were in effect, including all of the pleading standards. And by the way, this is helpful, and you don't have that much time, but what's the suggestion you make? The bankruptcy court did say they should be granted leave to amend. So we have that fact. But then legally, when you say case law is clear, it's either or. Are you saying there could never be an abuse of discretion then if it's chosen to defend? Is that the case law? And if so, what's the case? All right. Well, I'm going to tell you what my review of the case is. It's a non-comprehensive review. No, I just want your best case. All right. It really helps to give me one best case. Well, Judge McBride, in his memorandum opinion and order, cited Herman Holdings, which is certainly good enough, and in which the case was seven months old and when it was dismissed. I'm just going to interrupt you. Does Herman stand for the authority you just stated, that you can only defend or seek to amend? Or is it just a more plain, vanilla, we're going to go through the factors and see if there's an abuse? It goes through the factors. So what's the case that stands for what you just told us, that our law is clear, you can only defend or amend? What's that case? It doesn't say you can only defend or amend. What the case law says, and I'll give you an example. Spiller v. City of Texas, it was quoted in the Rosenblatt v. United Way of Greater Houston case, which is a 2010 Fifth Circuit case. This is Spiller v. City of Texas. It's a 1997 case. It holds, just as did Rosenblatt, that the plaintiff, who defends rather than amends, cannot complain of the loss of the right to amend. And so this case very clearly stands for that, and it cited Babb v. Dorman, also a Fifth Circuit case, with the same holding. I looked over as much of the case law as I could, and this is clearly not a comprehensive review. I found 20 cases in which the Fifth Circuit had affirmed a court's exercise of its discretion, dismissing a case after multiple pleading attempts had failed to cure the deficiencies, and I could not find a single one. And this is important because you would assume that the fact pattern that you would find here at least shows up once, where on a second amended or a third amended complaint, the court dismisses the case saying, you haven't gotten far enough. We've been in this case now. In our case, it was two years. You've been in this case through three amendments. We've had 20-some-odd different motions to dismiss. After the second amended complaint was filed, we had an additional 12 motions to dismiss. The defendants have gone through enough. The time has come, as Judge McBride found, to dismiss this case, and I couldn't find a single case on that fact pattern where this court had set aside the district court's exercise of its discretion. Am I right that in their response, in those first three cases, they did embrace the bankruptcy court's suggestion that they should be given leave to amend? Not exactly, Your Honor. I don't believe they did. I read the language of what was said at the June 12 hearing differently. Not the June 12. It's the October, November. You mean in the September? The final judgment on the first three, October recommendation? The response to the report and recommendation. Again, I read that differently, and my understanding of what they were saying was, if the court tells us that we need to amend, then we will do so, as opposed to requesting leave at that point. Because as Your Honor's questions clearly pointed out, from April of 2017 until June of 2017, they had the opportunity to amend before oral argument. From June 17 until September of 2017, when the report and recommendation was issued, they had an opportunity to amend, and they didn't. From the time that the report and recommendation came out, for another two months, until the trial court issued its memorandum opinion and order, they had an opportunity to amend, and they didn't. I should point out that this court has, in fact, Your Honor, Judge Higginson, you have written several opinions in which, under not identical circumstances, but not entirely dissimilar circumstances, you have upheld the trial court's exercise of discretion. Well, that's true. No one disputes discretion. I guess, and I'm not as experienced as my colleagues, and you likewise, but I would think there would have to be some statement or argument of prejudice. There would have to be some statement as to bad faith. We now have this final version that looks extraordinarily detailed. In fact, the arguments today are it's too extraordinarily detailed. So I am having a difficulty without prejudice, bad faith, maybe error as to futility, because these causes seem, you know, you may win them, but they don't seem to lack any basis. So I'm just looking at what I think is the full package of factors, and I'm not seeing many. Well, I should point out that the thousands of pages that were attached to the second and third amended petitions, and I'm just using the 72-fest example, they detail transactions. They don't specify why these transactions are fraudulent. Imagine, if you will, which ones aren't. But that's clear. If these were exorbitant, every money, the theory of their case, you may again win, is that the investors are paying money thinking they're getting an investment. In fact, it's going back to the licensees. It's very high. So there isn't much money going in to back up the premiums. But for every one of these individual defendants to know specifically how it is and why it is that they're supposed to be liable on counts that include fraud elements in them, they have to know how it is that you get from the leap of there was a transaction to that that transaction was fraudulent. And a list of transactions does absolutely nothing to enlighten them on that. And this is important because, as Judge Higginbotham held in the Williams v. WMX Technologies case, there is a high bar to get into the discovery process, and Rule 9b provides that bar. And in order to engage in the discovery process, you have to be in a position to be able to say how it is that you're being accused of fraud. And all of these counts cover various allegations and aspects of fraud. In fact, in Williams v. WMX, the judge reversed and remanded the case for dismissal because the fraud was not fled with sufficient particularity. And he goes on to say, a complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail, and goes on to reverse and remand. I think my time is up. But this is not a case without detail. Right, but the problem, and if I may answer, Your Honor, my apologies. Please, I asked you a question after your red light's on. You can answer it. Thank you. The fact of the matter is that alleging a significant amount of detail, in this case a significant number of transactions, is not the same thing as saying why those transactions constitute an actionable cause of action. It fails to meet Rule 8a, and it fails to meet Rule 9b. Okay, I think Judge Higginson's already asked this, but I'm still not clear. If you say every single one of those after a certain date was a part of a fraudulent scheme because there wasn't a basis to pay these exorbitant things, these commissions, to get more people into something that was such a loser. And the best way I can answer that is that there is no vicarious liability for somebody else's fraudulent scheme without an allegation as to the basis of that vicarious liability. And there is none in the thousands of pages of transaction descriptions that do not supplant the need for a live pleading, if that answers Your Honor's question. A pleading that talks about why it is, not just that a transaction took place, but that that transaction is actionable as to these people who only participated by selling the product. Well, you agree though that it's the transfer, the debtor, who has to be doing the fraudulent activity, right? Because it's the life partner's ink that's the fraudulent actor. Well, but in order for the third parties to be subject to having their commissions disgorged, they have to have more than, like for example in count one, there has to be some level of culpability. In count three, there has to be some level of culpability, and that's clearly. Not for constructive and not for... Those are counts two and four, Your Honor. Right. Right. So there's some where you can have no level of culpability and still have to disgorge. Right. Okay. Good. Okay. Thank you. I owe the panel a case citation with respect to the fiduciary duty and the fact that when you transition into counseling, I was referring to SECB Helms, which is found in 2015 Westlaw 510298, which is actually cited in our brief. I think that by way of rebuttal, I will just seriatim take up some of the points that I heard from opposing counsel, barring any issues of concern to the court. First, with respect to the Ponzi scheme or the Ponzi-like scheme or the Ponzi presumption, we are more than happy to avail ourselves of the benefit of the Ponzi characterization. In that regard, I want to direct the court to this court's holding in U.S. v. Murray 648 F. 3rd 251. It's a 2011 case where this court cautioned litigants against, quote, unquote, too narrowly characterizing the nature of a Ponzi scheme. The suggestion by Gallagher that it is only Ponzi if you are selling air is irreconcilable with this court's jurisprudence. But beyond the fact that although, again, we are more than happy to avail ourselves of the Ponzi presumption to the extent that it applies, it is not accurate to suggest that this Ponzi notion or these insolvency considerations are actual elements of all the causes of action. Again, to my point, you have to look at what the legal provision requires and then look at content. Counts one and three for actual fraudulent transfer do not require insolvency or even the equivalent. Instead, it can just be proof that the person defrauded the investor, which would be sufficient. There are in that statute discretionary badges of fraud that a person may, quote, unquote, may utilize to demonstrate actual intent to hinder, delay, or defraud. But that does not carry the import that the appellees are suggesting with respect to insolvency even in that context. As to the issue of who paid, was it the life partner's entity or someone else? I agree, Judge Elwalt, respectfully, in the Fourth Amendment claim, absolutely, nobody can be confused. But no one could have been confused in even the Third Amendment complaint because we incorporated by reference, as we're allowed to do under Rule 10C, so much comprehensive documentation on the fact that Life Partners, Inc. was the operational entity that was actually paying the fees and commissions. Just by way of example, using Cali as our point of reference, at Record Site 5326, Note 11, we incorporated by reference virtually all of those parallel proceedings, civil proceedings, adversary proceedings, bankruptcy proceedings, in which all of these issues were attempted. Instead of using Cali, why don't you just take Gallagher Financial so you can directly address his client's case? That same footnote is included in the case in which Gallagher is a party, where we incorporate the civil and the parallel actions in addition to Mr. Moran's trustees report. So in the exhibits, there are specific transfers to that licensee. I understand the question. You understand my question? I do. Gallagher is correct, Your Honor. What happens when you prepare a 3,000-page document that has to rely upon these significant cross-references is that you every once in a while make a mistake. We try to include a demonstrative exhibit as an aid to the respective defendants. Well, I like candor, but is this the first time you're saying Gallagher's correct, and what's the consequence for his claim? No, it's not, in the sense that they're suggesting that we have to plead the negative. We are not asserting claims against certain individuals, so you're not going to find factual content in the pleading that accuses those individuals of liabilities. Okay, so you gave some people a cross-reference sheet that says what you're pleading against their client? In the proposed amendment in all the cases. So did you give Gallagher that in a timely fashion? It's attached as an exhibit to the proposed amendment. Okay, but they had to go through this many rounds of briefing. Counsel, I'm sorry to take your time, and I'm not foreshadowing of what's going to happen in this case. I don't know what's going to happen in this case. But I would say as an important professionalism thing that you make sure that you meet with the people so they know what claims you're ‑‑ when it's something as complex as this, and there are various charts and tables and this, that you don't wait until people have already briefed things. We should not be in the situation where they don't know and we don't know until the reply brief who the claims are against, especially them. So in cases where you have with this many people and it's complex, you need to meet, have coffee or something, and tell the people what their claims are against their client. And that's just an appropriate professional courtesy that would save the court and your opposing counsel and you. You wouldn't have had to brief that had you done that appropriately. So that's a food for thought for the future. I absolutely agree. And, Kenley, what I have thought as I've heard these arguments is this is a matter of us getting on the phone and agreeing to a stipulation. The distinguishing consideration is Gallagher is in on some counts. It is true that there may be a typographical error with respect to other counts to which we did not intend to hold him accountable, and we will clean that up. The difficulty was from the outset, we did not include any factual content suggesting that they were liable on certain counts. We got into this complicated scenario where we have to try to redundantly state and restate things that we think that we articulated. And in this situation, it did translate into an error. It is the only one that I'm aware of. But if this court is inclined to remand this matter, I can assure the court that we will take care of these issues so that they won't have to be resolved by the district court. Could you ask one fact, one law question? The fact question is was there a scheduling deadline for motions to amend? He described a particular date. Coming out of the bankruptcy stay, when the court lifted the stay, it also gave us a date certain by which to file amended pleadings, and we filed our amended pleading on that day. Those are the live pleadings that were considered by the lower court and that the lower court dismissed. We timely complied with that deadline. The third complied with that deadline. In Cowley, it's the third, it's the second, and some of the other cases. The legal question is his statement about defend or amend. That's it. It's binary. The law is clear. The fact pattern of Thomas versus Chevron was a plaintiff who, in the alternative, requested leave to amend. That is not correct. The cases that Mr. Stromberg was referring to are cases in which the plaintiff made the improvident choice of being strident and saying, I'm standing on principle. I think that this pleading is adequate. Or cases in which the defendants moved for summary judgment. The summary judgment, I think, had been briefed, perhaps only argued, a significant amount of time passed, and only after the summary judgment was granted or risked did they then come back and say, I won't leave to amend. That's not what happened here. We were entirely proactive. I heard several arguments from counsel on issues that have been weighed. I think the court is sensitive to that. They did, in fact, brief certain arguments in their initial motion to dismiss. The bankruptcy court rejected them. They did not object to the rejected them. They did not then object to the report and recommendation. Judge McBride said, in no uncertain terms, I'm not taking up anything that doesn't have anything to do with the grounds for dismissal here. Under this court's authority, I cited a Fourth Circuit case just because it talks specifically about the bankruptcy referral statute. But this court, in several different contexts, also has held, in that procedural dynamic, when you don't object and when the district court does not take the issue up, it is weighed for purposes of appeal. Was Judge McBride's futility intimation based on lack of standing in any way? I do not believe so, Your Honor. There is an issue that has never been well developed, in my opinion, by appellees, with respect to the measure of damages under the Texas Security Act claim, as to whether or not it's monetary or rescission. But that depends upon any number of evidentiary issues. That does not, I think, align with whether or not, as a threshold matter, we have articulated sufficient content to proceed on the merits. The final observation I'll make is with respect to this notion of repeated amendments. My reading of this court's authority in the Dale Ginn case, I believe it was the 2016 case, is an example. This issue of repeated amendments is appropriately focused at situations in which the court has ruled against you and given you repeated opportunities to amend, and then finally the court, at some point in time, gets tired of it. The first ruling that our claims were deficient was the very same ruling, the recommendation from the Bankruptcy Court, in which the Bankruptcy Court recommended that we be given leave to amend. Again, members of the panel, the proper measure is whether or not the factual content corresponds with the legal elements, and we think that in every respect, notwithstanding some innocent mistakes, which we will clean up, we have articulated that factual content. We therefore request that you reverse the lower court's dismissal of our claims. Thank you. We have your argument.